**UNITED STATES DISTRICT COURT**
**DISTRICT OF KANSAS**

| | |
|---|---|
| VALERIE TORRES and VISHAL SHAH, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br>vs.<br><br>SELECTQUOTE INSURANCE SERVICES and SELECTQUOTE INC.,<br><br>Defendants | Case No.: 2:24-cv-02020-EFM-GEB |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINTS**

## TABLE OF CONTENTS

I. INTRODUCTION ........ 1

II. RELEVANT FACTUAL ALLEGATIONS ........ 1

III. ARGUMENT ........ 1

A. The Complaints Should be Dismissed For Failure to State a Claim under Rule 12(b)(6).. 1

1. The Complaints Fail to Meet the Pleading Standards as to All Claims ........ 2

2. The Complaints Also Fail to Present Sufficient Allegations Necessary to Each of the Specific Claims ........ 3

a) Plaintiffs' Claims for Invasion of Privacy Under the California Constitution Fail Because They Do Not Plead a Serious Invasion of Their Privacy ........ 3

b) Plaintiffs Do Not State a Common Law Claim for Invasion of Privacy for Intrusion Upon Seclusion ........ 5

c) Plaintiffs Have Not Lost Money Or Property as Is Required For a UCL Claim .... 6

d) Plaintiffs Fail to State a Claim for Unjust Enrichment ........ 8

e) Plaintiffs Do Not Allege a Violation of CIPA ........ 9

i. SelectQuote Cannot Be Liable Under CIPA as It Was a Party to the Communications and Internet Communications Do Not Apply to the "First Clause" ........ 10

ii. CIPA Does Not Apply Because Meta Did Not Intercept Contents of an "In Transit" Communication ........ 11

f) Plaintiffs Fail to State a Claim for Violation of the ECPA ........ 12

B. Plaintiffs' Claims Do Not Demonstrate Standing and Must Be Dismissed ........ 13

IV. CONCLUSION ........ 15

# TABLE OF AUTHORITIES

Page(s)

Cases

*Ali v. Douglas Cable*,
929 F. Supp. 1362 (D. Kan. 1996) .... 6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .... 1, 2

*Barbour v. John Muir Health*,
2023 WL 2618967 (Cal. Super., Jan. 5, 2023) .... 12

*Bass v. Facebook, Inc.*,
394 F. Supp. 3d 1024 (N.D. Cal. 2019) .... 7

*Byars v. Sterling Jewelers, Inc.*,
2023 WL 2996686 (C.D. Cal. Arp. 5, 2023) .... 4

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) .... 2, 3, 4, 5

*D'Angelo v. Penny OpCo, LLC*,
2023 WL 7006793 (S.D. Cal., October 24, 2023) .... 10

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 1064 (N.D. Cal. 2023) .... 7

*Frye v. IBP, Inc.*,
15 F. Supp. 2d 1032 (D. Kan. 1998) .... 6

*Gonzales v. Uber Techs, Inc.*,
305 F. Supp. 3d 1078 (N.D. Cal. 2018) .... 8

*Griffith v. TikTok, Inc.*,
2023 WL 7107262 (C.D. Cal., Oct. 6, 2023) .... 7

*Gubala v. Time Warner Cable, Inc.*,
846 F.3d 909 (7th Cir. 2017) .... 14

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .... 5

*Haz-Mat Response, Inc. v. Certified Waste Servs. Ltd.*,
910 P.2d 839 (Kan. 1996) .... 8

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020) ... 4

*Hill v. Nat'l Collegiate Athletic Assn.*,
7 Cal. 4th 1 (1994) ... 5

*In re Facebook Consumer Privacy User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ... 8

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ... 10

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ... 4

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016) ... 5

*In re Pharmatrak, Inc.*,
329 F.3d 9 (1st Cir. 2003) ... 12

*In re Practicefirst Data Breach Litig.*,
2022 WL 354544 (W.D.N.Y. Feb. 2, 2022) ... 14

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) ... 13

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) ... 10, 11

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) ... 7

*Kwikset Corp. v. Superior Court*,
51 Cal. 4th 310 (2011) ... 7

*Legg v. Leaders Life Ins. Co.*,
574 F. Supp. 3d 985 (W.D. Okla. 2021) ... 14

*Link v. Lawrence Mem. Hosp.*,
2022 WL 11089239 (D. Kan. Oct. 19, 2022) ... 6

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ... 3

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021) ... 4, 11

*Masterson v. IMA Financial Group, Inc.*,
2023 WL 8647157 (D. Kan. December 14, 2023) .......... 14

*Moore v. Rodriguez*,
2021 WL 2222590 (S.D. Cal. June 2, 2021) .......... 5

*Razuki v. Caliber Home Loans, Inc.*,
2018 WL 6018361 (S.D. Cal. Nov. 15, 2018).......... 14

*Rogers v. Ulrich*,
52 Cal. App. 3d 894 (1975) .......... 10, 11

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) .......... 3

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .......... 13, 14

*Sud v. Costco Wholesale Corp.*,
229 F. Supp. 3d 1075 (N.D. Cal. 2017).......... 7

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 13, 14

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) .......... 5

*Valenzuela v. Keurig Green Mountain, Inc.*,
2023 WL 3707181 (N.D. Cal., May 24, 2023).......... 12

*Valenzuela v. Nationwide Mut. Ins. Co.*,
2023 WL 5266033 (C.D. Cal., August 14, 2023).......... 9, 10

*Valenzuela v. Super Bright LEDs Inc.*,
2023 WL 8424472 (C.D. Cal., Nov. 27, 2023) .......... 12

*Werner v. Kliewer*,
710 P.2d 1250 (Kan. 1985).......... 5, 6

<u>Statutes</u>

18 U.S.C. § 2511(1) .......... 12, 13

18 U.S.C. § 2511(2)(d) .......... 12, 13

Cal. Bus. & Prof. Code § 17200 .......... 6

Cal. Bus. & Prof. Code § 17204 .......... 6

Cal. Penal Code § 631(a) ........ 9, 10, 11, 12

<u>Rules</u>

Rule 12(b)(1) ........ 15

Rule 12(b)(6) ........ 1, 15

<u>Other Authorities</u>

Restatement (Second) of Torts § 652B ........ 6

# I. INTRODUCTION

This action is one of many similar putative class actions filed in the last few years throughout the county alleging that a defendant's use of the ubiquitous advertising tool called the Meta Pixel ("Pixel") creates civil liability under various theories, and specifically violates criminal wiretap statutes. The Complaints do not allege that Plaintiffs' personally identifiable information ("PII"), healthcare information, or other information (collectively "information") was publicly disclosed. Instead, they claim that when they visited SelectQuote's website, their actions were disclosed to Meta via the Pixel. The Complaints are threadbare on facts and replete with legal conclusions, bald assertions, and improper statements of cases and legal doctrines typically found in briefing and which offer no factual support for any claim. As a result, the Complaints should be dismissed in their entireties because they do not sufficiently allege facts to support any of the claims and because Plaintiffs lack of Article III standing. As discussed in more detail, Plaintiffs' claims based on the widely deployed Pixel tool fall short, and in any event SelectQuote's use of the Pixel, was disclosed and consented to by users like Plaintiffs.

# II. RELEVANT FACTUAL ALLEGATIONS

Plaintiffs allege that SelectQuote owns and operates the publicly accessible website www.selectquote.com (the "website"). *See* Compl. ¶¶ 1-3. Plaintiffs further allege that SelectQuote installed and implemented the Pixel on the website which enables the transmission and disclosure of their information to Meta. *Id*. at ¶¶ 1-4. Additional allegations, if any, relevant to Plaintiffs' specific claims are discussed in the context of those claims below.

# III. ARGUMENT

## A. The Complaint Should be Dismissed For Failure to State a Claim under Rule 12(b)(6)

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the plaintiff must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Moreover, "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

**1. The Complaints Fail to Meet the Pleading Standards as to All Claims**

The Complaint should be dismissed because it lacks sufficient specific factual allegations of Plaintiffs' interactions with SelectQuote's website, which is at the center of every claim. An instructive case is *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117 (S.D. Cal. 2023), which made similar claims as here: the plaintiffs' "overarching theory of their case, underlying all claims," was that the defendant "collected patients' personal and sensitive medical information on [the defendant's] website and that this information was then improperly shared with Meta without patients' consent." *Id.* at 1123.

The court in *Cousin* dismissed the complaint entirely because the plaintiffs provided "no meaningful factual support as to what activities each [p]laintiff engaged in on [the defendant's] website and what information each [p]laintiff provided." *Id*. The court explained that:

> [The plaintiffs] allege in a conclusory manner that [the d]efendant disclosed to Meta their personal, confidential, and sensitive medical information; communications and messages with doctors; medical test results; payment information; and, password reset information. However, these allegations are conclusory and devoid of any factual support. For example, [the p]laintiffs fail to factually support their contention that these activities took place . . . . [The p]laintiffs do not explain what information they provided to [the d]efendant. [The p]laintiffs cannot maintain their theory of the case absent this factual support.

*Id.* at 1123. The court rejected assertions that the plaintiffs entered "sensitive personal and health information" on the defendant's website as "utterly devoid of factual enhancement," as they did

"not explain what personal or health information they entered on the webpage, which was then subsequently shared with Meta." *Id.* at 1124.

Here too, Plaintiffs do not specify what information (if any) they entered and what information was then shared with Meta. Plaintiffs allege they used SelectQuote's website to search for life insurance and provided "PII and health information" but offer no detail as to what specific information they provided. Compl. ¶¶ 20-21. Plaintiffs try to mask their lack of facts by claiming that generic ***consumers*** provide certain information, but do not allege they themselves provided any such information. *Id.* at ¶ 37. Thus, just as in *Cousin*, Plaintiffs' claims rest on SelectQuote's alleged disclosure of their information to Meta, but the Complaints do not actually allege Plaintiffs provided any particular information via the website. Therefore, their Complaints should be dismissed following the same rationale of the *Cousin* court.

**2. The Complaints Also Fail to Present Sufficient Allegations Necessary to Each of the Specific Claims**

a) **Plaintiffs' Claims for Invasion of Privacy Under the California Constitution Fail Because They Do Not Plead a Serious Invasion of Their Privacy**

"The California Constitution and the common law set a high bar for an invasion of privacy claim." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012). "To prove a claim under the California right to privacy, a plaintiff must first demonstrate three elements: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy under the circumstances; and (3) conduct by the defendant that amounts to a serious invasion of the protected privacy interest." *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 524 (C.D. Cal. 2021). Here, Plaintiffs do not plausibly plead any requirement in the Complaints.

First, as noted above, Plaintiffs do not allege what, if any, of their information was actually disclosed, instead claiming that SelectQuote used the Pixel to record and communicate their PII,

"including unique identifiers and FIDs alongside their confidential communications and medical information" to Meta. Compl. ¶ 190. Without alleging what specific information was disclosed, this hardly rises to the level of a serious invasion of a legal protected privacy interest. *See In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (finding that disclosure of personal information and location information does not constitute a serious breach); *Cousin*, 681 F. Supp. 3d at 1124 (dismissing invasion of privacy claim where "it is not clear" "what information [plaintiffs] shared with [defendant] that was subsequently obtained by [a third party]"); *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1193 (N.D. Cal. 2020) (dismissing invasion of privacy claims where the court had "doubts about the seriousness of the alleged invasion"). The few factual allegations alleged here, like in *Heeger*, are alleged "on information or belief," without specifically alleging whether and what the Pixel actually disclosed. *Heeger*, 509 F. Supp. 3d at 1187. Simply put, the Complaints "read[] like a book report" that merely summarizes how Pixel works such that businesses like SelectQuote may use them and what information ***consumers*** (not Plaintiffs) may provide. *Id.*; Compl. ¶ 37; *Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686, at *3 (C.D. Cal. Arp. 5, 2023) ("Plaintiff does not allege that she disclosed any sensitive information to Defendant, much less identify any specific personal information she disclosed that implicates a protectable privacy interest. She therefore has not identified any harm to her privacy."); *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1142 (E.D. Cal. 2021) (constitutional privacy claim dismissed where plaintiff did not "specify what the content of any of [his] messages were" and provided "no indication of the sensitivity of the communications at issue other than a conclusory assertion that they were 'personal and private'").

Second, the Complaints do not allege a reasonable expectation of privacy or a highly offensive intrusion. The very nature of SelectQuote's service is that consumers' information is

provided to third parties to generate insurance quotes - SelectQuote is only a broker between consumers and insurance companies. Thus, to receive the very services Plaintiffs admit they visited the website to obtain, website visitors must understand the information is necessarily shared with third parties. California courts find that when "voluntary consent is present, a defendant's conduct will rarely be deemed highly offensive to a reasonable person so as to justify tort liability." *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 3 (1994); *United States v. Forrester*, 512 F.3d 500, 509 (9th Cir. 2008). Plaintiffs cannot claim they did not know SelectQuote would share information with third parties when they expressly state they were using the website to obtain quotes from third parties: "there is no reasonable expectation of privacy when the data collection is within users' common-sense expectation or when the information is not sensitive." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1089 (N.D. Cal. 2022); *see also In re Nickelodeon Consumer Priv. Litig*., 827 F.3d 262, 266 (3d Cir. 2016) ("Most of us understand that what we do on the Internet is not completely private ... [and] [w]e recognize, even if only intuitively, that our data has to be going somewhere.").

Moreover, Plaintiffs' constitutional invasion of privacy claim impermissibly seeks monetary damages. Compl. ¶¶ 194-196. However, California's constitutional provision protecting the right to privacy "does not confer on a litigant a private right of action for damages." *Moore v. Rodriguez,* No. 20-cv-1481-BAS, 2021 WL 2222590, at *20 (S.D. Cal. June 2, 2021); *Cousin*, 681 F. Supp. 3d at 1127-28 (holding that monetary damages are unavailable under this claim). Accordingly, the California invasion of privacy claim fails as a matter of law.

#### b) Plaintiffs Do Not State a Common Law Claim for Invasion of Privacy for Intrusion Upon Seclusion

A claim for intrusion upon seclusion requires allegations of 1) an intentional interference in the solitude or seclusion of a person's physical being or prying into his/her private affairs or

concerns; and 2) that the intrusion would be highly offensive to a reasonable person. *Werner v. Kliewer*, 710 P.2d 1250, 1255 (Kan. 1985); *Link v. Lawrence Mem. Hosp.*, 2022 WL 11089239, at *5 (D. Kan. Oct. 19, 2022). The interference must be substantial, highly offensive to a reasonable person, and a result of conduct to which a reasonable person would strongly object. *Ali v. Douglas Cable Comms.*, 929 F. Supp. 1362, 1383 (D. Kan. 1996). The plaintiff must show that both the manner of the intrusion and the nature of the information sought rise to the level of being offensive to a reasonable person. *Frye v. IBP, Inc.*, 15 F. Supp. 2d 1032, 1040 (D. Kan. 1998). While research shows numerous examples of intrusions upon a plaintiff's seclusion, SelectQuote is not aware of a single case that would apply the claim under Kansas law in the way Plaintiffs allege. *See Werner*, 710 P.2d at 1255 (citing Restatement (Second) of Torts § 652B). In short, none of the Complaints' allegations satisfy the above elements or fall into any of the above recognized examples.

While disclosure of medical information of a "particularly sensitive and embarrassing nature" to over one hundred co-workers was found to be highly offensive to a reasonable person, we do not know what information (if any) is at issue concerning Plaintiffs' interaction with the website. *See Link*, 2022 WL 11089239, at *5. Plaintiffs also do not claim a disclosure to a large group of individuals who knew them (such as co-workers). Moreover, SelectQuote did not intrude into Plaintiffs' privacy, as they freely provided their information to SelectQuote knowing it would be shared with third parties to obtain a quote. Thus, the Complaint reveals SelectQuote obtained the information at issue in the regular course of business – and did not "invade" any space.

**c) Plaintiffs Have Not Lost Money Or Property as Is Required For a UCL Claim**

California's Unfair Competition Law ("UCL") creates a cause of action for business practices that are: (1) unlawful, (2) unfair, or (3) fraudulent. Cal. Bus. & Prof. Code § 17200 *et seq*. In order to establish standing for a UCL claim, plaintiffs must show they personally lost money

or property "as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204; *see also Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011) (to have standing to bring a UCL claim, the plaintiff must have suffered a "loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury* …") (emphasis in original). The UCL's requirement of economic injury "renders standing under [the UCL] substantially narrower than federal standing ..." *Kwikset*, 51 Cal. 4th at 324.

Here, Plaintiffs make a formulaic allegation that SelectQuote's supposedly unfair business practices caused Plaintiffs and putative class members to "suffer injury in fact and lost money or property." Comp. ¶ 206. However, Plaintiffs offer no facts supporting this conclusory allegation. To the extent that Plaintiffs allege that SelectQuote "has diminished the value of th[eir] information" and that they "derive economic value from" their information, Compl. ¶ 207, this is also insufficient for a UCL claim. "It is not enough to merely say the information was taken and therefore it has lost value." *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1040 (N.D. Cal. 2019). Where a plaintiff fails to allege any "impairment of the ability to participate" in a market for personal information, that "lack of specificity is fatal" to a UCL cause of action. *See id.*; *see also Griffith v. TikTok, Inc.*, 2023 WL 7107262, at *11 (C.D. Cal., Oct. 6, 2023) ("In the absence of allegations that Plaintiff incurred actual financial losses, for example because she wished to sell her browsing data but was unable to do so or would be paid less for the data, she has not plausibly alleged economic injury for purposes of UCL standing."). In short, because Plaintiffs have not plausibly alleged that they suffered an economic injury,[1] the UCL claim should be dismissed *See*, *e.g.*, *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 1064, 1089-91 (N.D. Cal. 2023); *Katz-Lacabe v.*

[1] Plaintiffs' pleading failures are compounded on this claim as the Complaints do not satisfy the heighted pleading standard of Rule 9(b). *See Sud v. Costco Wholesale Corp.*, 229 F. Supp. 3d 1075, 1083-84 (N.D. Cal. 2017), aff'd, 731 Fed. App'x 719 (9th Cir. 2018).

*Oracle Am., Inc.*, 668 F. Supp. 3d 928, 943-44 (N.D. Cal. 2023) (dismissing UCL claim as "mere misappropriation of personal information does not establish compensable damages"); *In re Facebook Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 804 (N.D. Cal. 2019) (rejecting plaintiffs' theory of economic loss predicated on defendant's alleged gain of money through sharing the plaintiffs' information as "purely hypothetical"); *Gonzales v. Uber Techs, Inc.*, 305 F. Supp. 3d 1078, 1093 (N.D. Cal. 2018) ("the sharing of names, user IDs, location and other personal information does not constitute lost money or property for UCL standing purposes.").

**d) Plaintiffs Fail to State a Claim for Unjust Enrichment**

Plaintiffs fail to state a viable claim for unjust enrichment, which requires allegations showing: (1) "a benefit conferred upon the defendant by the plaintiff;" (2) "an appreciation or knowledge of the benefit by the defendant;" and (3) "the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value." *Haz-Mat Response, Inc. v. Certified Waste Servs. Ltd.*, 910 P.2d 839, 847 (Kan. 1996). In both Complaints, Plaintiffs allege SelectQuote "intentionally" intercepted and disclosed their information "for marketing and retargeting purposes in an effort to bolster profits." Compl. ¶¶ 6, 138, 157-160. Plaintiffs further allege that SelectQuote had knowledge of the benefits conferred on it and Plaintiffs suffered actual damages through SelectQuote's use of the tracking software. *Id.* ¶¶ 101-106. These conclusory allegations, however, are insufficient.

Here, neither Plaintiff alleges that they conferred any benefit upon SelectQuote that would be unjust for SelectQuote to retain. SelectQuote provided insurance policy services to Plaintiffs in exchange for their applications for quotes. Thus, the services Plaintiffs pursued and received in visiting SelectQuote's website were provided by SelectQuote for Plaintiffs' own benefit. The use

of SelectQuote's website was incidental to the ordinary business practice of providing insurance policy services.

While Plaintiffs dedicate significant portions of their respective Complaints to discussing benefits that third parties like Meta may enjoy from the collection of information, tellingly, they offer conspicuously little regarding SelectQuote's alleged benefit. Instead, Plaintiffs merely offer conclusionary allegations that SelectQuote used the information for advertisement purposes, trading information to third parties to bolster profits. Plaintiffs do not allege they would have sold their information to any third parties, but still claim they are entitled to "all proceeds, profits, benefits, and other compensation obtained by Defendant" from use of the information for allegated targeted advertising. Compl. ¶¶ 106, 157-161. Yet, Plaintiffs do not allege they purchased or sought any services from SelectQuote that they would otherwise not have purchased or pursued as a result of any such targeted advertising. Nor do Plaintiffs allege that SelectQuote actually profited or increased its profits from this alleged targeted advertising. Without any enrichment of SelectQuote that would be unjust for it to retain, there can be no claim under this cause of action. In short, Plaintiffs allegations of "enrichment: lack any cognizable or quantifiable basis such that Plaintiffs' alleged damages are undefined and speculative, and insufficient to support an unjust enrichment claim.

**e) Plaintiffs Do Not Allege a Violation of CIPA**

Plaintiffs' CIPA claim is premised on the theory that SelectQuote violated Cal. Penal Code § 631(a). Compl. ¶¶ 162-182. That section of CIPA is treated as having four different subparts or "clauses" which are independent bases for violation of the statute, which respectively prohibit three different "patterns of conduct." *Valenzuela v. Nationwide Mut. Ins. Co*., 2023 WL 5266033, *3 (C.D. Cal., August 14, 2023). The three prohibited behaviors are summarized as (1) intentional

wiretapping, (2) attempting to learn the contents or meaning of a communication in transit over a wire, and (3) attempting to use or communicate information obtained as a result of engaging in activities prohibited under (1) or (2). *Id*. at *4. Section 631(a) also contains a fourth prohibition against aiding or conspiring with any person in violating one of clauses (1) through (3). Plaintiffs appear to assert SelectQuote violated each of the four clauses of section 631(a). Compl. ¶¶ 162-182.

#### i. SelectQuote Cannot Be Liable Under CIPA as It Was a Party to the Communications and Internet Communications Do Not Apply to the "First Clause"

As an initial matter, the First Clause of CIPA "applies only to 'telegraph and telephone wires, lines, cables, or instruments,' and not to internet connections." *D'Angelo v. Penny OpCo, LLC*, 2023 WL 7006793, *6 (S.D. Cal., October 24, 2023) (collecting cases); *see also Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 897 n. 3 (N.D. Cal. 2023) ("the first prong of Section 631 does not apply to internet communications"). Here, Plaintiffs claim they used both internet connections and smartphones, both of which have been rejected by courts. *Id.*

Plaintiffs' CIPA claim further fails based on the "party exception" that "[a] party to a conversation cannot logically be liable for 'eavesdropping' on a conversation, so a party to a communication is not liable for learning the contents of that communication" either. *Valenzuela*, 2023 WL 5266033 at * 4 (citing *In re Facebook, Inc. Internet Tracking Litig*., 956 F.3d 589, 607-608 (9th Cir. 2020)). As a result, a party to a conversation is also not prohibited from recording a conversation and later sharing that recording with a third party. *See Javier*, 649 F. Supp. 3d at 897-98 (*citing Rogers v. Ulrich*, 52 Cal. App. 3d 894, 897-99 (1975)). As the website's owner with whom Plaintiffs were allegedly communicating, SelectQuote "cannot be held liable ... for

recording it." *See id.* at 897 n.3 (citing *Rogers*, 52 Cal.App.3d at 899). Accordingly, none of the first three clauses may impose liability on SelectQuote.

**ii. CIPA Does Not Apply Because Meta Did Not Intercept Contents of an "In Transit" Communication**

Plaintiffs cannot plausibly allege a CIPA claim against SelectQuote for "aiding" Meta when they fail to plausibly allege an underlying claim against Meta under CIPA. *See Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1137 (E.D. Cal. 2021) (dismissing CIPA claim "because none of the alleged conduct that [defendant] allegedly 'agreed to' or 'aided' violated [CIPA]"). Specifically, Plaintiffs fail to allege that Meta intercepted a communication "in transit." An interception of a "communication" occurs only "while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state." Cal. Penal Code § 631(a).

Plaintiffs allege that: "When a user accesses the webpage(s) hosting the Pixel, their communications with the host webpage are instantaneously and surreptitiously ***duplicated*** and sent to Facebook's servers[,]" thus, "this ***second*** simultaneous secret transmission is initiated by Defendant's source code[.]" Compl. ¶¶ 51-52 (emphasis added). They further allege that: "Upon triggering of the Pixel, the Website user's communications were intercepted, ***duplicated***, and secretly transmitted to Facebook at the same time the message is dispatched to Defendant. Thus, two communications originate from a user's browser once the user initiates an action on the webpage: one as intended, to Defendant, and a second, undetectable to the user, is simultaneously sent to Facebook." *Id.* at ¶ 87. This means that when a user accesses a website with the Pixel and takes certain actions on that website, the Pixel directs the user's browser to send a ***separate*** message to Meta's servers since Meta's code initiates this when a user interacts with the website. Accordingly, although Plaintiffs claim the pixel intercepts the communication "in transit," no

interception occurs where the contents being acquired are of a second, separately transmitted communication, as opposed to the interception being of "the same" communication while it is "in transit." *See* Cal. Penal Code § 631(a); *see also Barbour v. John Muir Health*, 2023 WL 2618967, *8 (Cal. Super., Jan. 5, 2023) (dismissing CIPA claim in Pixel healthcare case, stating, "Plaintiffs have not alleged Defendant's 'interception' while 'in transit'"); *Valenzuela v. Keurig Green Mountain, Inc*., 2023 WL 3707181, at *6 (N.D. Cal., May 24, 2023) ("Plaintiff cannot avoid the simultaneity argument merely because she sends or receives a message in California."); *Valenzuela v. Super Bright LEDs Inc*., 2023 WL 8424472, at *10 (C.D. Cal., Nov. 27, 2023) (collecting cases). There Plaintiffs' allegations regarding the Pixel would not establish liability under CIPA.

#### f) Plaintiffs Fail to State a Claim for Violation of the ECPA

Plaintiffs further claim SelectQuote violated the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2511(1) et seq., (the "Federal Wiretap Act" or "Wiretap Act"). The "Wiretap Act provides a private right of action against one who 'intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication.'" *In re Pharmatrak, Inc.*, 329 F.3d 9, 18 (1st Cir. 2003).

"A plaintiff pleads a prima facie case under the Act by showing that the defendant (1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication, (5) using a device." *Id.*. However, "[i]t shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication." 18 U.S.C. § 2511(2)(d) (the "party exception").

Accordingly, ECPA requires that a defendant engage in an interception while not a party to the communication. *See* 18 U.S.C. § 2511(1). Plaintiffs admit that SelectQuote was the intended recipient of their alleged communications. Compl. ¶ 135. An intended recipient of a communication cannot unlawfully intercept the same communication as a matter of law. *See* 18 U.S.C. § 2511(2)(d). Therefore, because SelectQuote was a party to the communication in question, Plaintiffs' claim should be dismissed. *See In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1026 (N.D. Cal. 2014) ("the consent of one party is a complete defense to [the ECPA].").

**B. Plaintiffs' Claims Do Not Demonstrate Standing and Must Be Dismissed**

Plaintiffs bear the burden of demonstrating they have Article III standing, requiring that Plaintiffs have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Standing is an issue of subject matter jurisdiction and may be challenged under Rule 12(b)(1).

"To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* at 339. Under Article III, "an injury in law is not an injury in fact." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021) (citation omitted). "Traditional tangible harms," such as physical and monetary harms, qualify as "concrete" injuries. *Id.* at 425. Although the Supreme Court has acknowledged that intangible harms can also be concrete, in order to properly allege such intangible harms, a plaintiff "must point to an injury that 'has a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts.'" *TransUnion*, 594 U.S. at 440.

Additionally, "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo*, 578 U.S. at 341. Thus, the Supreme Court has rejected the proposition

that "a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *TransUnion*, 595 U.S. at 426 (quoting *Spokeo*, 578 U.S. at 341). Accordingly, unless a plaintiff claims an intangible harm subject to the above-described exception, statutory violations such as those Plaintiffs allege here cannot confer standing merely because they authorize statutory damages.

Here, Plaintiffs have not alleged any real or threatened actual injury sufficient to support a finding that Article III standing exists. The harms Plaintiffs allege include: (i) diminution of value of their information, and (ii) statutory damages. Compl. ¶¶ 145-206. However, beyond these conclusory allegations, Plaintiffs offer no specifics regarding the supposed value of their information or any decrease thereto, or any expenditures, costs, or losses whatsoever. Plaintiffs' supposed harms have either not been found by courts – including this Court – to constitute the requisite threatened or real injury sufficient to support standing or else have been explicitly rejected by courts. *See TransUnion v. Ramirez*, 141 S. Ct. 2190, 2204 (2021) (To have Article III standing, plaintiffs must allege physical or monetary harm, or an intangible harm that can be deemed concrete); *Masterson v. IMA Financial Group, Inc.*, 2023 WL 8647157, *7 (D. Kan. December 14, 2023) (holding that claims of diminished value of PII are insufficient to demonstrate Article III standing); *Razuki v. Caliber Home Loans, Inc.*, No. 17-cv-1718-LAB (WVG), 2018 WL 6018361, at *1 (S.D. Cal. Nov. 15, 2018) (alleged damages including diminution in value of personal data were insufficient to establish standing); *Gubala v. Time Warner Cable, Inc.*, 846 F.3d 909, 912-13 (7th Cir. 2017) (diminution in value of personal information does not qualify as an injury-in-fact for the purposes of standing); *In re Practicefirst Data Breach Litig.*, No. 1:21-cv-00790, 2022 WL 354544, at *7 (W.D.N.Y. Feb. 2, 2022) (same); *Legg v. Leaders Life Ins. Co.*,

574 F. Supp. 3d 985, 994 (W.D. Okla. 2021) (same). Because Plaintiffs lack Article III standing, their Complaints should be dismissed.

## IV. CONCLUSION

For all the foregoing reasons, Defendants SelectQuote Insurance Service and SelectQuote, Inc., respectfully request that the Court grant the motion to dismiss Plaintiffs' Class Action Complaints pursuant to Fed. R. Civ. P. 12(b)(1) because Plaintiffs lack standing, or, alternatively, pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

Respectfully Submitted,

July 1, 2024

/s/ *Mary C. O'Connell*

James F. Monagle (pro hac vice)
Mullen Coughlin LLC
500 Capital Mall, Suite 2350
Sacramento, CA 95814
P: (267) 930-1529
F: (415) 846-8435
jmonagle@mullen.law

Mary C. O'Connell
Rouse Frets White Goss Gentile Rhodes, PC
5250 W. 116th Place, Suite 400
Leawood, KS 66211
P: (913) 387-1600
F: (913) 928-6739
moconnell@rousepc.com

***Attorneys for Defendants***

**CERTIFICATE OF SERVICE**

I hereby certify that on July 1, 2024, a true and correct copy of the foregoing document has been served upon all counsel of record via CM/ECF.

/s/ Mary C. O'Connell